NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2022 IL App (4th) 220307-U

NO. 4-22-0307

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
April 20, 2022
Carla Bender
4th District Appellate
Court, IL

| | |
|---|---|
| MATTHEW ALLEN, as Well as on Behalf of All Other Educators Similarly Situated; ROBYN GAUBATZ and JARVIA BRYANT, as Well as on Behalf of All Other Educators Similarly Situated; TRACI GORNICK, LYNETTE BAYER, RAECHEL MAYBERRY-REIDY, CHRISTINE DERKACY, PATRICIA POTOCKI, JOY SEPUT, REBECCA VANT, and DORYL TOMAIN-O'LEAR, as Well as on Behalf of All Other Educators Similarly Situated; MERISSA PETERS, BETH WORMHOUDT, MICHELE FIGGINS, JANET BLADE, and MICHELLE NEAL, as Well as on Behalf of All Other Educators Similarly Situated; DARLA MAHAFFEY and ALICIA McCLURE, as Well as on Behalf of All Other Educators Similarly Situated; ALLYCIA HVEZDA, AMY ZACKARY, LAURA CLARK, DAWN SOMA, and STEPHANIE MYERS, as Well as on Behalf of All Other Educators Similarly Situated; CARA BLEVINS, DEBORAH HALSTEAD, KELLIE REINKE, and COURTNEY VOOGT, as Well as on Behalf of All Other Educators Similarly Situated; BREANNA GOBER, CHRISTA WHETSTONE, and MICAH ERZINGER, as Well as on Behalf of All Other Educators Similarly Situated; LISA M. FOSTER, as Well as on Behalf of All Other Educators Similarly Situated; STEPHANIE SCHWAPPACH, JEANETTE ADAMICK, and LINDA BERG, as Well as on Behalf of All Other Educators Similarly Situated; SAMANTHA HELLRUNG and ZACHARY BONEBREAK, as Well as on Behalf of All Other Educators Similarly Situated; LENA CARRILLO, ASHLEY RAFALIN, YALILA ASSRIA-HERRERA, MARGARITA MAYAS, MARY KELLY, and VANESSA RODRIGUEZ, as Well as on Behalf of All Other Educators Similarly Situated; SARAH FRANCIS, ROXANNE PRICE, JENNIFER LINCOLN, GENE MITCHELL II, MELISSA TANNER, MICHELLE ROMAINE, and LISA WOLFE, as Well as | Appeal from the Circuit Court of Sangamon County No. 21CH500007 |

on Behalf of All Other Educators Similarly Situated; )
KIMBERLY MAHER, ABRAM ZELLER, KELLI )
THOMPSON, and KIMBERLY HALVERSON, as Well )
as on Behalf of All Other Educators Similarly Situated; )
GERALD BERGER, as Well as on Behalf of All Other )
Educators Similarly Situated; KATHERINE TOERING, )
BARBARA WERTZ, DEANNA HORTON, JENNIFER )
BAER, and WILLIAM TROUTT, as Well as on Behalf )
of All Other Educators Similarly Situated; NICOLE )
POTTHAST, as Well as on Behalf of All Other )
Educators Similarly Situated; MICHAEL LINDEN, )
RENEE WELCH, KARI ACUFF, STEPHANIE )
MODAFF, BARBARA KENSEK, JEANNE )
PUSKARIC, AMY CLEVER, and DESIREE )
RODRIQUEZ, as Well as on Behalf of All Other )
Educators Similarly Situated; HEIDI KELLER, AMY )
SCHWAB, JULIE FOX, HEATHER NELSON, )
KATHERINE FELZ, COLLEEN CASHMORE, as Well )
as on Behalf of All Other Educators Similarly Situated; )
STEFANI DONALDSON, TOM OLLER, FAITH )
ROBINSON, CHRIS STEVENS, STEPHANIE )
STOYANOFF, and MELISSA TEBBE, as Well as on )
Behalf of All Other Educators Similarly Situated; )
CHRISTINA BECKER, VICKI BRIDGES, JESSICA )
GREEN, and AMBER STEVENS, as Well as on Behalf )
of All Other Educators Similarly Situated; KIMBERLY )
SMOOT, RYAN JUGAN, KADENCE KOEN, ERICA )
THOMPSON, and ROBERT TELGER, as Well as on )
Behalf of All Other Educators Similarly Situated, )
     Plaintiffs )
(Lena Carrillo, Ashley Rafalin, Yalila Assria-Herrera, )
Margarita Mayas, Mary Kelly, and Vanessa Rodriguez, )
Plaintiffs-Appellees), )
      v. )
THE BOARD OF EDUCATION OF NORTH MAC )
COMMUNITY UNIT SCHOOL DISTRICT NO. 34, a )
Body Politic and Corporate; THE BOARD OF )
EDUCATION OF WATERLOO COMMUNITY UNIT )
SCHOOL DISTRICT NO. 5, a Body Politic and )
Corporate; THE BOARD OF EDUCATION OF )
PLAINFIELD SCHOOL DISTRICT NO. 202, a Body )
Politic and Corporate; THE BOARD OF EDUCATION )
OF CUMBERLAND COMMUNITY UNIT SCHOOL )
DISTRICT NO. 77, a Body Politic and Corporate; THE )
BOARD OF EDUCATION OF JASPER COUNTY )
COMMUNITY UNIT DISTRICT NO. 1, a Body Politic )

and Corporate; THE BOARD OF EDUCATION OF )
BELVIDERE COMMUNITY UNIT SCHOOL )
DISTRICT NO. 100, a Body Politic and Corporate; THE )
BOARD OF EDUCATION OF YORKVILLE )
COMMUNITY UNIT SCHOOL DISTRICT NO. 115, a )
Body Politic and Corporate; THE BOARD OF )
EDUCATION OF MASCOUTAH COMMUNITY UNIT )
DISTRICT NO. 19, a Body Politic and Corporate; THE )
BOARD OF EDUCATION OF DECATUR SCHOOL )
DISTRICT NO. 61, a Body Politic and Corporate; THE )
BOARD OF EDUCATION OF HIGHLAND )
COMMUNITY UNIT SCHOOL DISTRICT NO. 5, a )
Body Politic and Corporate; THE BOARD OF )
EDUCATION OF CITY OF CHICAGO SCHOOL )
DISTRICT NO. 299, a Body Politic and Corporate; THE )
BOARD OF EDUCATION OF MARION )
COMMUNITY UNIT SCHOOL DISTRIC NO. 2, a )
Body Politic and Corporate; THE BOARD OF )
EDUCATION OF ROANOKE BENSON )
COMMUNITY UNIT SCHOOL DISTRICT NO. 60, a )
Body Politic and Corporate; THE BOARD OF )
EDUCATION OF ARLINGTON HEIGHTS SCHOOL )
DISTRICT NO. 25, a Body Politic and Corporate; THE )
BOARD OF EDUCATION OF EUREKA )
COMMUNITY UNIT DISTRICT NO. 140, a Body )
Politic and Corporate; THE BOARD OF EDUCATION )
OF STAUNTON COMMUNITY UNIT SCHOOL )
DISTRICT NO. 6, a Body Politic and Corporate; THE )
BOARD OF EDUCATION OF COMMUNITY UNIT )
SCHOOL DISTRICT NO. 308, a Body Politic and )
Corporate; THE BOARD OF EDUCATION OF )
CRYSTAL LAKE COMMUNITY CONSOLIDATED )
SCHOOL DISTRICT NO. 47, a Body Politic and )
Corporate; THE BOARD OF EDUCATION OF TRIAD )
COMMUNITY UNIT SCHOOL DISTRICT NO. 2, a )
Body Politic and Corporate; THE BOARD OF )
EDUCATION OF EDWARDSVILLE COMMUNITY )
UNIT SCHOOL DISTRICT NO. 7, a Body Politic and )
Corporate; THE BOARD OF EDUCATION OF )
SPRINGFIELD SCHOOL DISTRICT NO. 186, a Body )
Politic and Corporate; THE ILLINOIS DEPARTMENT )
OF PUBLIC HEALTH; DR. NGOZI EZIKE, in Her )
Official Capacity as Director of the Illinois Department )
of Public Health; THE ILLINOIS STATE BOARD OF )
EDUCATION; DR. CARMEN I. AYALA, in Her )
Official Capacity as State Superintendent of Education; )

and JAY ROBERT PRITZKER, in His Official Capacity )
as Governor of the State of Illinois, )
           Defendants )
(The Board of Education of City of Chicago School )     Honorable
District No. 299, a Body Politic and Corporate, )     Raylene Grischow,
Defendant-Appellant). )     Judge Presiding.

JUSTICE TURNER delivered the judgment of the court.
Justice Harris and Justice Holder White concurred in the judgment.

**ORDER**

¶ 1    *Held:*  The temporary restraining order entered on behalf of the plaintiffs is vacated.

¶ 2    On April 8, 2022, the Sangamon County circuit court issued a temporary restraining order (TRO) on behalf of the following plaintiffs who are teachers employed by defendant, the Board of Education of the City of Chicago School District No. 299, and members of the Chicago Teachers Union (union): Lena Carrillo, Ashley Rafalin, Yalila Assria-Herrera, Margarita Mayas, Mary Kelly, and Vanessa Rodriguez. Defendant appeals, asking this court to vacate the TRO for a variety of reasons. After considering the arguments of the parties, we hold the circuit court erred in granting the TRO and vacate the TRO.

¶ 3                    I. BACKGROUND

¶ 4    On October 15, 2021, defendant announced its employees who had not submitted proof of vaccination for COVID-19 could continue working if the employees took a COVID-19 test on a weekly basis. Under defendant's policy, a teacher who did not provide proof of vaccination or comply with required weekly testing could be deemed ineligible to work and placed on a nondisciplinary administrative leave until the teacher complied with the policy of either vaccination or weekly testing. A teacher's continued noncompliance with the policy could result in disciplinary action.

¶ 5    According to defendant, it makes free COVID-19 testing available to all

employees at school during paid working hours. Further, the test is neither painful nor invasive and is self-administered by the employee. An employee who tests positive is referred to his or her own doctor for diagnosis and treatment.

¶ 6 In December 2021, plaintiffs and educators in other school districts filed a verified complaint for declaratory judgment and injunctive relief against numerous school districts, including defendant in this appeal, the Department of Public Health (Department) and its director, the Illinois State Board of Education and the State Superintendent of Education, and Governor Pritzker. On March 10, 2022, plaintiffs filed an emergency motion for entry of a TRO pursuant to section 11-101 of the Code of Civil Procedure (Procedure Code) (735 ILCS 5/11-101 (West 2020)). Plaintiffs argued they could not be compelled to take a COVID-19 vaccine or be subjected to weekly testing without first being afforded their right to due process. Plaintiffs also alleged defendant had no lawful authority to require a teacher to either get a COVID-19 vaccination or submit to testing for COVID-19. Two of the plaintiffs, Ashley Connolly (formerly known as Ashley Rafalin) and Vanessa Rodriguez, had been notified they each would be suspended on March 11, 2022, for failing to either get vaccinated or submit to testing. The remaining plaintiffs had chosen to be tested on a weekly basis due to defendant's disciplinary threats.

¶ 7 According to plaintiffs' motion, they were "suffering continuing harm in that each is being subjected to an unlawful vaccination or testing policy without being provided their statutorily protected rights of due process of law by [defendant]." The motion alleged plaintiffs had shown a reasonable likelihood of success of establishing defendant was violating their procedural and substantive due process rights under Illinois law.

¶ 8 Defendant responded on March 14, 2022, arguing its policy was mandated by

Executive Order 2022-07 (Exec. Order No. 2022-07, 46 Ill. Reg. 4974 (Mar. 4, 2022)), which Governor Pritzker issued on March 4, 2022. Further, defendant argued the circuit court lacked subject matter jurisdiction over the dispute because the plaintiffs' claims are governed by the Illinois Educational Labor Relations Act (115 ILCS 5/1 *et seq.* (West 2020)) and the collective bargaining agreement between defendant and the union. Further, plaintiffs had not exhausted their contractual remedies. Defendant also argued plaintiffs had not established the elements necessary to justify issuance of a TRO. According to defendant, it has the right and responsibility to provide a safe and healthy work environment, plaintiffs have not alleged they are harmed in any way by weekly COVID-19 testing, and nothing in the Illinois Department of Public Health Act (Public Health Act) (20 ILCS 2305/1.1 *et seq.* (West 2020)) precludes defendant from taking steps necessary to protect its employees from COVID-19 or other infectious diseases.

¶ 9        The circuit court heard arguments on plaintiffs' motion on March 15, 2022, and took the matter under advisement. The court gave the parties until March 25, 2022, to submit proposed orders to the court. On March 18, 2022, the court requested clarification on certain issues and asked counsel for the parties to provide responses on or before March 25, 2022. The court also extended the deadline for counsel to submit proposed orders to the court until March 28, 2022.

¶ 10        On April 8, 2022, the circuit court granted plaintiffs' motion for a TRO. The court indicated plaintiffs had presented a legitimate issue as to defendant's authority to implement its policy because the Department "is the entity that has 'general supervision of the interests of the health and lives of the people of the State, *has supreme authority in matters of quarantine* and isolation, *and may declare and enforce quarantine* and isolation when none

- 6 -

exists and may modify or relax quarantine and isolation when it has been established.' See 20 ILCS 2305/2 [(West 2020)] (emphasis added)." The court then stated it had previously found "vaccines and testing are forms of quarantine which are subject to due process." Further, the court indicated defendant had not identified any statutory authority authorizing it to create a policy requiring its employees to either receive the COVID-19 vaccine or test weekly. According to the court:

"The [Public Health Act] [(20 ILCS 2305/2(c) (West 2020))] gives this Court jurisdiction over claims arising under that statute. The Legislature has already delegated matters related to vaccination, testing, masking, and other measures intended to mitigate infectious disease to [the Department]. There is no independent authority granted to either the Governor or the collective bargaining organizations on this topic. Under the laws of the State of Illinois, the decision whether, when, and how to require vaccination and testing of certain individuals is delegated to the [Department]. Plaintiffs' right to due process of the law is codified in 20 ILCS 2305 *et seq.* [(West 2020).] These rights belong to the individual by operation of Illinois statute. The Legislature has chosen to require that certain disputes surrounding working conditions can only be resolved through collective bargaining and arbitration. It has not chosen to treat the subjects of disease mitigation, vaccination and/or testing in the same way. Hence, this Court has jurisdiction."

¶ 11 The circuit court then proceeded to consider the merits of plaintiffs' motion for a TRO and whether they demonstrated "(1) a clearly ascertained right in need of protection, (2) irreparable injury in the absence of an injunction, (3) no adequate remedy at law, and (4) a

- 7 -

likelihood of success on the merits of the case." As for plaintiffs' clear right in need of protection, the court found sections 2(d) and (e) of the Public Health Act (20 ILCS 2305/2(d), (e) (West 2020)) "expressly provide due process rights for plaintiffs to refuse vaccination and/or testing."

¶ 12        According to the circuit court, "exclusion from one's place of employment is a type of modified quarantine." Further, plaintiffs had due process rights in need of protection before they could be excluded from the public school building and prevented from teaching due to their decision not to be vaccinated or submit to weekly testing. The circuit court also found plaintiffs were suffering an irreparable injury because their due process rights were being violated every day. According to the court, plaintiffs had the right to insist defendant comply with the statutory requirements approved by the legislature. Further, the court found plaintiffs' continuous loss of legal rights could not be cured retroactively after the case had been decided on its merits. In addition, the court found plaintiffs had "satisfied their burden of raising a fair question of establishing a likelihood of success on the merits that the [Public Health Act] is the controlling law regarding matters of vaccination and/or testing policies that are being implemented by [defendant]." Finally, the court indicated the legislature had already balanced the hardships between plaintiffs and defendant when it determined individuals are entitled to due process if they do not consent to vaccination or weekly testing.

¶ 13        This appeal followed.

¶ 14                              II. ANALYSIS

¶ 15        " 'When seeking injunctive relief under the common law, the party seeking a preliminary injunction or TRO must establish facts demonstrating the traditional equitable elements that (1) it has a protected right; (2) it will suffer irreparable harm if injunctive relief is

not granted; (3) its remedy at law is inadequate; and (4) there is a likelihood of success on the merits.' " *Fox Fire Tavern, LLC v. Pritzker*, 2020 IL App (2d) 200623, ¶ 22, 161 N.E.3d 1190 (quoting *County of Du Page v. Gavrilos*, 359 Ill. App. 3d 629, 634, 834 N.E.2d 643, 649 (2005)). To show a likelihood of success on the merits, plaintiffs only need to set forth a fair question the right they claim exists and lead the court to believe they will probably be entitled to the relief they request if the proof sustains their allegations. *Fox Fire Tavern*, 2020 IL App (2d) 200623, ¶ 22. "If these elements are met, then the court must balance the hardships and consider the public interests involved." *Makindu v. Illinois High School Ass'n*, 2015 IL App (2d) 141201, ¶ 31, 40 N.E.3d 182.

¶ 16            Ordinarily, a circuit court's decision to grant or deny a motion for a TRO will not be disturbed unless the court abused its discretion. *Fox Fire Tavern*, 2020 IL App (2d) 200623, ¶ 11. "However, where the propriety of a TRO rests on a purely legal issue, that issue should be reviewed *de novo*." *Fox Fire Tavern*, 2020 IL App (2d) 200623, ¶ 11. A trial court's interpretation of a statute involves a question of law which will be reviewed *de novo*. *Fox Fire Tavern*, 2020 IL App (2d) 200623, ¶ 11.

¶ 17            In its order granting the TRO, the circuit court indicated the General Assembly has "made it clear that plaintiffs have a due process right to object before being subjected to vaccination, testing, isolation, or quarantine, all of which are alleged to prevent the spread of an infectious disease." However, the statute relied upon by the trial court does not state a public school district must obtain a court order before it can place a teacher on unpaid administrative leave for refusing to either get vaccinated or tested on a weekly basis. Instead, the statute affords an individual the right to due process if he or she does not consent to an order from the Department or a certified local health department. This case does not involve a situation where

the Department or a certified local health department has ordered plaintiffs to do anything.

¶ 18        We note section 2 of the Public Health Act gives officials at the Department powers that can significantly impact the individual rights of any person in this state. Section 2 states in part:

> "The [Department] shall investigate the causes of dangerously contagious or infectious diseases, especially when existing in epidemic form, and take means to restrict and suppress the same, and whenever such disease becomes, or threatens to become epidemic, in any locality and the local board of health or local authorities neglect or refuse to enforce efficient measures for its restriction or suppression or to act with sufficient promptness or efficiency, or whenever the local board of health or local authorities neglect or refuse to promptly enforce efficient measures for the restriction or suppression of dangerously contagious or infectious diseases, the [Department] may enforce such measures as it deems necessary to protect the public health, and all necessary expenses so incurred shall be paid by the locality for which services are rendered." 20 ILCS 2305/2(a) (West 2020).

Subject to the due process requirements the General Assembly imposed on the Department if an individual does not consent, the Department may do the following: (1) "order a person or group of persons to be quarantined or isolated or *** order a place to be closed and made off limits to the public to prevent the probable spread of a dangerously contagious or infectious disease *** until such time as the condition can be corrected or the danger to the public health eliminated or reduced in such a manner that no substantial danger to the public's health any longer exists" (20 ILCS 2305/2(b) (West 2020)); (2) "order physical examinations and tests and collect laboratory

specimens as necessary for the diagnosis or treatment of individuals in order to prevent the probable spread of a dangerously contagious or infectious disease" (20 ILCS 2305/2(d) (West 2020)); (3) "order the administration of vaccines, medications, or other treatments to persons as necessary in order to prevent the probable spread of a dangerously contagious or infectious disease" (20 ILCS 2305/2(e) (West 2020)); and (4) "isolate or quarantine persons whose refusal to undergo observation and monitoring results in uncertainty regarding whether he or she has been exposed to or is infected with a dangerously contagious or infectious disease or otherwise poses a danger to the public's health" (20 ILCS 2305/2(f) (West 2020)). Based on the immense powers held by unelected public officials within the Department, it appears the General Assembly providently required the Department to obtain a court order in situations involving liberty interests before it could enforce its orders against nonconsenting individuals.

¶ 19 Defendant is not vested with these broad powers, nor is it trying to exercise them. Instead, it has adopted workplace rules for the protection of students and school employees. At issue in this case is a policy that only applies to defendant's employees. Plaintiffs argue neither defendant nor other school districts are "the protectors of overall public health." We agree but fail to see how this bolsters plaintiffs' position on appeal. Defendant's policy is not calculated to maintain the health of the community at large. Nothing in the policy restricts the plaintiffs' activities, movement, or interactions anywhere outside of the workplace. Finally, we stress the weekly test defendant is requiring plaintiffs to take is noninvasive, nonharmful, self-administered, free to the teachers, available on school property, and can be taken during paid working hours. While it may be questionable why only unvaccinated employees are required to take these weekly tests, the tests and the manner defendant makes the tests available to its employees do not appear unreasonable.

¶ 20        *Based on the specific facts and arguments in this case*, we are not persuaded plaintiffs have demonstrated a likelihood of success on the merits.  As a result, we vacate the TRO issued by the circuit court.

¶ 21                              III. CONCLUSION

¶ 22        For the reasons stated above, we hold the circuit court erred by granting plaintiffs' motion for a TRO.  Therefore, we vacate the TRO issued by the circuit court on April 8, 2022, at 2:22 p.m.

¶ 23        Order vacated.